# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 10-08679 MMM (JEMx) | Date | May 4, 2011 |

| | |
|---|---|
| Title | *Site Management Solutions, Inc. et al. v. TMO CA/NV, LLC, et al.* |

| | |
|---|---|
| Present: The Honorable | MARGARET M. MORROW |

| | |
|---|---|
| ANEL HUERTA | None |
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** Order Remanding Action to State Court for Lack of Subject Matter Jurisdiction

On October 14, 2010, plaintiff Site Management Solutions, Inc. commenced this unlawful detainer action in San Bernardino Superior Court.[1] On November 12, 2010, defendant TMO CA/NV, LLC ("T-Mobile"), removed the action to this court, asserting that it fell within the court's diversity jurisdiction.[2] On December 8, 2010, the court ordered defendant to show cause why the action should not be remanded to state court for lack of subject matter jurisdiction.[3] Defendant has filed a response to the court's order asserting that federal jurisdiction is proper.[4]

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds the matter appropriate for decision without oral argument. The hearing and scheduling conference currently set for May 9, 2011 are therefore vacated.

---

[1] Complaint, Exh. A to Notice of Removal ("Removal"), Docket No. 1 (Nov. 12, 2010) at 20.

[2] Removal at 2.

[3] Order to Show Cause, Docket No. 12 (Dec. 8, 2010).

[4] Response to Order to Show Cause, Docket No. 18 (Jan. 6, 2011).

## I. FACTUAL BACKGROUND

Solutions is a California corporation that maintains its principal place of business in California.[5] T-Mobile is a Delaware corporation with its principal place of business in Washington state.[6] Solutions' complaint pleads an unlawful detainer claim related to a T-Mobile wireless communications site located in Chino.[7] It alleges that T-Mobile failed to pay rent due for 2010 under an agreement between the parties.[8] In addition to damages equivalent to the rent allegedly due, Solutions also seeks to have T-Mobile's telecommunications equipment removed from the Chino site.[9]

Although the amount in controversy stated in the complaint does not exceed $25,000,[10] T-Mobile alleges that "in fact [more than] $500,000" is at issue, thus satisfying the jurisdictional requirement that there be more than $75,000 in controversy before the court may exercise diversity jurisdiction.[11]

On December 26, 2006, Solutions filed an action against T-Mobile in San Diego Superior Court, seeking payment of rent, late fees, and holdover charges under an agreement between the parties ("the 2006 action"). T-Mobile alleges that this case was resolved in its favor in 2010. Among the sums Solutions sought to recover in the 2006 action were sublicense fees or rent allegedly due for the Chino site for the period from 2007 to 2009. The suit concerned rent purportedly owing at thirty-one other T-Mobile wireless telecommunications sites as well,[12] and sought damages of "$1,754,544.91."[13]

---

[5]Removal, ¶¶ 7-9.

[6]*Id.*

[7]*Id.*, ¶ 2.

[8]Complaint at 3; Removal, ¶ 17.

[9]Complaint at 4.

[10]*Id.*, Exh. B at 96 (demanding $20,336.76 in rent dues).

[11]Removal, ¶ 10.

[12]Notice of Related Cases ("Related Cases"), Docket No. 3 (Nov. 12, 2010), at 1; see also Removal, ¶ 12.

[13]Removal, ¶ 13.

T-Mobile alleges that, after the 2006 action was decided, Solutions served notices to pay rent or quit for each of twenty-five sites. One of the notices concerned the Chino site.[14] Each notice demanded payment of $20,336.76, the amount purportedly due and owing for 2010; the total sought for all twenty-five sites was $508,419.[15] Each of the notices stated that if T-Mobile did not pay the rent purportedly due, Solutions would commence legal proceedings seeking to remove T-Mobile's telecommunications equipment from the utility poles, and "recover a judgment for the amount of the rent" claimed.[16] T-Mobile has not paid "the 'rents' demanded by [Solutions] in its [n]otices."[17]

T-Mobile asserts that the court has jurisdiction to hear this action despite the fact that the complaint seeks only $20,336.76 in rent on the Chino site. T-Mobile alleges that "the only plausible reason for [Solutions'] filing of an unlawful detainer action as to a *single* site [is] to attempt to avoid federal diversity jurisdiction."[18] It attaches particular importance to the fact that Solutions intends to initiate unlawful detainer actions with respect to all 25 sites,[19] and the fact that in the earlier San Diego action, it sought payment of rent for *all*[20] of these sites.

## II. DISCUSSION

A. **Legal Standards Governing Removal Jurisdiction**

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a). Only state court actions that could originally have been filed in federal court may be removed. 28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

---

[14]*Id.*, ¶ 16.

[15]*Id.*

[16]*Id.*; see also Complaint, Exh. B at 96.

[17]Removal, ¶ 17.

[18]*Id.*, ¶ 18.

[19]*Id.*, ¶ 19 (emphasis original).

[20]*Id.*, ¶ 18 (emphasis original).

3

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), and *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

### B. Whether This Case Was Properly Removed Under 28 U.S.C. § 1332

Defendants contend that this matter falls within the court's diversity jurisdiction under 28 U.S.C. § 1332. "[J]urisdiction founded on [diversity] requires that parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); see 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . .").

#### 1. Complete Diversity

Federal courts have jurisdiction only where there is complete diversity: the plaintiff's citizenship must be diverse from that of each named defendant. 28 U.S.C. §§ 1332(a)(1), 1332(c)(1); see *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 n. 3 (1996); see also *Cook v. AVI Casino Enters., Inc.*, No. 07-15088, 2008 WL 4890167, *3 (9th Cir. Nov. 14, 2008) (Unpub. Disp.) ("We have jurisdiction only if Cook, a resident of California, has citizenship which is diverse from that of every defendant," citing *Lewis*, 519 U.S. at 68). Here, the complete diversity requirement is satisfied, because Solutions is incorporated and has its principal place of business in California, while T-Mobile is a Delaware corporation, with its principal place of business in Washington.[21] The court thus turns to the amount in controversy requirement.

#### 2. Amount in Controversy

T-Mobile has not met its burden of demonstrating that the amount in controversy in this action exceeds $75,000. "[W]hen a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, [the amount in controversy] requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). See also *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (stating that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith"

---

[21]Removal, ¶¶ 7-9.

and that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal"). Where, by contrast, "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled[,] . . . [courts] apply a preponderance of the evidence standard." *Guglielmino*, 506 F.3d at 699. Finally, "when a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the 'party seeking removal must prove with legal certainty that [the] jurisdictional amount is met.'" *Id.* (quoting *Lowdermilk v. U.S. Bank National Association*, 479 F.3d 994, 1000 (9th Cir. 2007)). Here, where Solutions alleges that there is less than $25,000 in controversy, T-Mobile must prove with legal certainty that the jurisdictional threshold is satisfied.

Solutions contends that the amount in controversy requirement is not met.[22] It notes that its complaint seeks "past due rent of $20,336.76" on the Chino site.[23] Solutions contends that T-Mobile's "other debts and/or obligations to Solutions are irrelevant to Solution's unlawful detainer action relating to possession of . . . the Chino [s]ite."[24]

Defendant counters that "there is no purpose in splintering the claims so that only one lawsuit is filed on only *one* of the 25 sites for which the 10-Day Notices were served *other than to deprive T-Mobile of federal jurisdiction*."[25] Defendant cites *Freeman v. Blue Ridge Paper Prods.*, 551 F.3d 405, 409 (6th Cir. 2008), which held that separate actions filed in state court relating to separate time periods could be aggregated for purposes of satisfying the amount in controversy requirement of the Class Action Fairness Act ("CAFA") "where there [was] no colorable basis for dividing up the sought-for retrospective relief . . . other than to frustrate CAFA." See also *Proffitt v. Abbott Laboratories*, No. 2:08-CV-151, 2008 WL 4401367, *5 (E.D. Tenn. Sept. 23, 2008) (permitting removal under CAFA where there was no justification for dividing a claim arbitrarily into multiple lawsuits "other than to circumvent . . . federal court jurisdiction").[26]

Although this case does not involve jurisdiction under CAFA, T-Mobile contends that *Freeman* and *Proffitt* support its position that the court should consider the total value of rents allegedly due

---

[22]Brief Re: Order to Show Cause Re: Diversity Jurisdiction ("Pl.'s Response"), Docket No. 15 (Dec. 23, 2010), at 1.

[23]*Id.*

[24]*Id.* at 1-2.

[25]Response to Order to Show Cause ("Def.'s Response"), Docket No. 17 (Jan. 6, 2011), at 16-17.

[26]Removal, ¶ 20.

5

on *all* sites, not just the Chino site, in evaluating whether the amount in controversy has been met.[27] The court disagrees. Courts in this circuit and elsewhere have repeatedly emphasized that *Freeman* applies only where there is "no colorable basis for dividing the claims" other than to avoid federal jurisdiction. See *Tanoh v. Dow Chemical Co.*, 561 F.3d 945, 955 (9th Cir. 2009) (holding that *Freeman* wa not applicable where "each of the seven state court actions was brought on behalf of a *different* set of plaintiffs, meaning that none of the plaintiff groups stands to recover in excess of CAFA's $5 million threshold between the seven suits" and thus that "none of the seven groups of plaintiffs has divided its claims into separate lawsuits to expand recovery"); *Royalty Alliance, Inc. v. Tarsadia Hotel*, Nos. 09CV2739 DMS (CAB), 10CV1231 DMS (CAB), 2010 WL 3339202, *3 (S.D. Cal. Aug. 23, 2010) ("In this case, *Royalty Alliance* has a different class of Plaintiffs than *Salameh*. In *Salameh*, the proposed class members are individuals who purchased a condominium unit in HRHSD. In *Royalty Alliance*, the proposed class members comprise individuals who attempted to purchase a condominium unit at HRHSD but, after putting down a deposit, were unable to complete the purchase. *Royalty Alliance* also contains three state law claims not present in *Salameh*. Thus, while similarities exist between the claims, there is a <u>colorable</u> <u>basis</u> for dividing up the lawsuits as Plaintiffs have done. Accordingly, combining the two matters for purposes of determining CAFA jurisdiction is unwarranted" (emphasis added)); *Villareal v. Dole Food Co., Inc.*, No. CV 09-189-CAS (VBKx), 2009 WL 690146, *4 (C.D. Cal. Mar. 9, 2009) (distinguishing *Freeman* where "each of the cases at issue here involves distinct plaintiffs," and observing that "the Sixth Circuit explicitly noted that its 'holding is limited to the situation where there is <u>no</u> <u>colorable</u> <u>basis</u> for dividing up the sought-for retrospective relief into separate time periods, other than to frustrate CAFA'" (emphasis added)); see also *Marple v. T-Mobile Cent.*, LLC, Nos. 10-CV-00954-NKL, 10-CV-00955, 10-CV-00956, 10-CV-00957, 10-CV-00958, 10-CV-00959, 10-CV-00960, 10-CV-00961, 10-CV-00962, 10-CV-00963, 2011 WL 300162, *3 (W.D. Mo. Jan. 27, 2011) ("Here, in contrast, Plaintiffs have at least a <u>colorable</u> <u>basis</u> for filing ten separate class actions against T-Mobile. Each class action corresponds to a separate state court action that T-Mobile itself has filed. Because this case is clearly distinguishable from *Freeman*, the Court will not expand upon a Sixth Circuit exception to the plain meaning of the CAFA text" (emphasis added)).

Solutions has demonstrated that it had more than a colorable basis – in fact, a good reason – for initiating this action solely with respect to the Chino site. "An unlawful detainer action is a summary proceeding, the primary purpose of which is to obtain the possession of real property in the situations specified by statute. The statutory procedure must be strictly followed." *Vasey v. California Dance Co.*, 70 Cal.App.3d 742, 746 (1977). An unlawful detainer action must be filed in the county where the property is located. CAL. CODE CIV. PROC. § 392(a)(1) ("[T]he superior court in the county where the real property that is the subject of the action, or some part thereof, is situated, is the proper court for the trial of [actions for the recovery of real property]"). Of the

---

[27]Def.'s Response at 15-16.

twenty-five sites for which Solutions served notices to pay rent or quit, only five are located in San Bernardino County. There is no indication that Solutions could properly bring an unlawful detainer action seeking summary possession of multiple properties, particularly when some of the properties are located in other counties. Therefore, the court concludes that Solutions had, at the very least, a colorable basis for filing an unlawful detainer action seeking possession only of the Chino site.

Moreover, unlike *Freeman*, this is not a case in which Solutions divided its claims into separate lawsuits to expand recovery. Plaintiff has not actually filed unlawful detainer actions to obtain possession of the remaining 24 disputed sites. The court cannot speculate as to whether Solutions intends to bring claims for the remaining 24 disputed sites.[28] Therefore, the court can consider only the current claim, which seeks possession of the Chino site and unpaid rent that has accrued for that site.

Given Solutions' clear allegation that the amount in controversy does not exceed $75,000, and defendant's failure to adduce any evidence to the contrary, the court concludes that the amount in controversy requirement is not met. See *Faulkner v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL 820198, *2 (N.D. Cal. Oct. 4, 1999) (in evaluating the amount in controversy, "the district court must first consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy"); see also *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) ("[W]here the plaintiff does not claim damages in excess of [the jurisdictional amount] and the defendant offers 'no facts whatsoever' to show that the amount in controversy exceeds [the jurisdictional amount], then the defendant has not borne the burden on removal of proving that the amount in controversy requirement is satisfied," citing *Gaus*, 980 F.2d at 566–67). Accordingly, the court lacks diversity jurisdiction to hear the action.

### III. CONCLUSION

For the reasons stated, the court lacks subject matter jurisdiction to hear this action, and directs the clerk to remand the case to the San Bernardino Superior Court forthwith.

---

[28] As even the *Freeman* court noted, "plaintiffs can avoid removal under CAFA by limiting the damages they seek to amounts less than the CAFA thresholds. Generally, if a plaintiff 'does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.'" *Freeman*, 551 F.3d at 408 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938)). Likewise, the court cannot assume that Solutions intends to bring unlawful detainer actions to regain possession of the remaining 24 sites, when it has currently only filed one case.